UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| APRIL LUNA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 3:17-CV-919 JD |
| FRANCISCAN ALLIANCE INC., | ) |
| Defendant. | ) |

## OPINION AND ORDER

April Luna worked for Franciscan Alliance, providing technical support for its physician practices. She also has a son who has serious medical concerns and requires constant care. She thus took intermittent leave under the Family and Medical Leave Act when she needed to take her son to appointments or be with him during the day. Franciscan always allowed her to take that time off when she needed it. When Ms. Luna applied to transfer to a different position within the organization, though, she was denied an interview because her boss said her attendance needed improvement. Ms. Luna saw that as a reference to her FMLA leave, so she filed this suit. She alleges that Franciscan interfered with her FMLA rights or retaliated against her by denying her request to transfer.

Franciscan has now moved for summary judgment. It argues that the transfer was purely lateral, so that denying the request did not constitute an adverse action. It also argues that it denied the transfer for reasons unrelated to Ms. Luna's FMLA leave. The Court agrees on the first point. Though Ms. Luna subjectively preferred the new position to her existing one, the inquiry is an objective one. And Ms. Luna has not offered evidence from which a jury could find that working in her existing position instead of the new position would be materially adverse under an objective standard. The Court therefore grants the motion for summary judgment.

## I. FACTUAL BACKGROUND

Franciscan Alliance is a healthcare organization that includes hospitals, doctors' offices, and other resources. April Luna began working for Franciscan in 2012 in its information technology group. Her title was Level 3 Application Business Analyst, and she provided support for Franciscan's medical records system. She worked on the Support Center team and primarily supported the ambulatory application, meaning the application used by Franciscan's physician practices.

Shortly after Ms. Luna began working for Franciscan, her young son was diagnosed with a serious health condition. Her son requires 24-hour care, and receives nursing care during the day. After the diagnosis, Franciscan granted Ms. Luna a personal leave to take care of her son. Once Ms. Luna became eligible for FMLA leave, Franciscan approved her for intermittent FMLA leave, which she would use when she needed to take him to appointments or otherwise take care of him. Franciscan also approved alternate work schedules. Beginning in 2016, Ms. Luna worked from home three days per week, with two days a week in the office. She was also excused from meetings or travel as necessary.

In January 2017, Ms. Luna requested to transfer to another position. The position had the same title, but was on the Ambulatory/Home Health team instead of the Support Center team. The difference was that the new position supported both physician practices (or "ambulatory" practices) and home health, while her existing position focused on the physician practices. The position would not have resulted in a promotion or increase in pay for Ms. Luna, nor had any other employees who made a similar move received a promotion or increase in pay. Because the position also supported the home health practice, Ms. Luna would have needed to obtain a home health certification in the software she supported, in addition to the ambulatory certification she

already had. The certification was not required to receive the new position, but she would have needed to obtain it within six months.

When an employee requests an internal transfer, Franciscan requires the employee's supervisor to complete a performance evaluation. The evaluation asks the supervisor to rate the employee in the categories of attendance, interpersonal relations, quality of work, and quantity of work. Ms. Luna's supervisor, Brooke Elzinga, rated her as "meets" or "sometimes exceeds" standards in three of those categories. In the attendance category, though, Ms. Elzinga checked that Ms. Luna's performance "needs improvement." She wrote that she had been working with Ms. Luna to improve her time management and team availability, but that "time away during normal business h[ou]rs has caused team concerns around increasing log counts & full contribution." Ms. Elzinga later asserted that she was not referring to Ms. Luna's absences for FMLA leave, but to other occasions on which Ms. Luna would miss time during the day for non-FMLA reasons and would make up that time after hours, after the practices they supported were closed, and that Ms. Luna would sometimes be unavailable to her team while she was working, which impaired her productivity. Ms. Luna, however, saw this as a plain reference to her FMLA leave, as she did not believe that she had attendance problems and had never been criticized for her attendance before.

After she submitted the transfer request, Ms. Luna was told that she would not be interviewed for the position because of Ms. Elzinga's evaluation. Franciscan instead hired another less-qualified candidate. Ms. Luna thus continued in her existing position, but began looking for work elsewhere. Several months later, Ms. Luna accepted a job with another company and left Franciscan. She then filed this suit claiming that Franciscan denied her the transfer because she had taken FMLA leave, in violation of her rights under the FMLA.

3

## II.  STANDARD OF REVIEW

A court must grant summary judgment if the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

## III.  DISCUSSION

Ms. Luna asserts a single claim: that Franciscan denied her transfer request because she took FMLA leave. The FMLA entitles eligible employees to up to 12 weeks of leave per year, and also makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" that right, or to "discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(1), (a)(2). Regulations clarify that an employer "cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions[.]" 29 C.F.R. § 825.220(c); *accord Breneisen v. Motorola, Inc.*, 512 F.3d

972, 978 (7th Cir. 2008). There is no dispute that Ms. Luna was eligible for FMLA leave and in fact took that leave. Thus, the questions are whether Franciscan took a "materially adverse action" against Ms. Luna, and whether it did so because she took FMLA leave.[1] *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009); *Breneisen*, 512 F.3d at 978–79. Franciscan argues that a jury could not find in Ms. Luna's favor on either point. The Court only reaches the adverse-action issue, as it is dispositive.

While the FMLA forbids using FMLA leave as a negative factor in employment actions, the Seventh Circuit has held that those claims are only actionable when the employment action is "materially adverse." *Cole*, 562 F.3d at 816. "Materially adverse actions . . . include any actions that would dissuade a reasonable employee from exercising his rights under the FMLA." *Breneisen*, 512 F.3d at 979 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)); *see also Freelain v. Village of Oak Park*, 888 F.3d 895, 901–02 (7th Cir. 2018). This is an objective standard, so the plaintiff's subjective preferences are not relevant. *Freelain*, 888 F.3d 902. "The question is whether a reasonable person in the plaintiff's circumstances would be dissuaded from engaging in protected activity." *Id.*; *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009).

There is no evidence that Ms. Luna would have received more pay in the new position, and Ms. Luna does not argue to the contrary. Instead, she argues that the position for which she applied was preferable to her existing one and had better career prospects. "[A] significant or substantial change to an employee's responsibilities may be materially adverse, but every

---

[1] The parties quibble over whether Ms. Luna's claim is best framed as one for interference or retaliation, but the distinction is not material here. *Cole*, 562 F.3d at 816 (holding that a plaintiff must establish a "materially adverse" action even when the claim is that the employer used the taking of FMLA leave as a negative factor in an employment action); *see Breneisen*, 512 F.3d at 978–79.

reassignment is not automatically actionable." *Stephens*, 569 F.3d at 790. "Whether a change in job responsibilities is materially adverse 'all depends on how much of a change, and how disadvantageous a change, took place." *Id.* at 791. The Seventh Circuit has cautioned that such a change "is not materially adverse unless it represents a *significant* alteration to the employee's duties, which is often reflected by a corresponding change in work hours, compensation, or career prospects." *Id.*; *see also Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012) (holding that denying a transfer could be an adverse action, "provided the transfer would have resulted in higher pay or benefits"); *Breneisen*, 512 F.3d at 979 ("If the transfer was a demotion or resulted in fewer promotional opportunities, it would qualify as . . . a materially adverse action."); *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001) ("To be actionable, there must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

Ms. Luna attempts to show that she experienced an adverse action in that manner, but she does little to develop the evidence in support of that argument. Her brief identifies the applicable legal standard, but when it comes to establishing how the facts of this case meet that standard, all it says is this: "The Plaintiff sought a transfer that she felt was more desirable than her current position; the Defendant denied it. Plaintiff has articulated the reasons she preferred the position: opportunity for a different certification and work on a new team, both of which would have improved her promotional opportunities." [DE 38 p. 17]. This argument falls short for multiple reasons. First, an adverse action is evaluated on an objective standard, meaning it is "based on how a reasonable employee might react, not the plaintiff's subjective feelings." *Freelain*, 888 F.3d at 902. Ms. Luna's preference for the new position is thus not relevant. *Stutler*, 263 F.3d at

6

702–03 ("The fact that [the plaintiff] did not like the new position is irrelevant when there is no evidence that the transfer decreased her responsibilities or benefits in any way."). Instead, she needs to provide evidence that would permit a finding that a reasonable person in her circumstances would find the action to be materially adverse. *Robertson v. Wis. Dep't of Health Servs.*, No. 19-1179, 2020 WL 593930, at *7 (7th Cir. Feb. 7, 2020); *Freelain*, 888 F.3d at 902.

Ms. Luna does not adequately flesh out her argument on that point, though. The argument section of her brief does not cite to the record at all on this issue, [DE 38 p. 16–18], so the argument could fail for that reason alone. *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 848–49, 852 (7th Cir. 2015) (affirming summary judgment on a retaliation claim because the plaintiff failed to cite evidence in the relevant section of her analysis, even though the brief cited some relevant evidence in its statement of facts). Ms. Luna refers to the chance to work on a new team, but offers no reason why that new team would be objectively preferable to her old one.[2] She also asserts that the new position would have improved her promotional opportunities, but does not explain how. That sort of conclusory assertion is not sufficient to withstand summary judgment. *See Robertson*, 2020 WL 593930, at *9 (affirming summary judgment because the plaintiff failed to identify any way in which the change in her responsibilities "resulted in a corresponding change in work hours, compensation, or career prospects"); *Moore v. City of Chi.*, 126 F. App'x 745, 748 (7th Cir. 2005) ("[A plaintiff] cannot establish an adverse employment action through unsupported statements and subjective beliefs that his transfer resulted in decreased responsibility and lost opportunities to enhance his skills and advance his career."). And again, Ms. Luna cites no evidence in support of this assertion.

---

[2] There is also a passing reference that the new job would have included some duties on the "development and build side" instead of just the support side, but there is no evidence about what that entails or why the difference would be material.

The only remaining difference Ms. Luna identifies is that the new position would have required her to obtain a new certification. That factor falls short for the same reason, though, as Ms. Luna gives no context or explanation about the significance of obtaining such a certification. Ms. Luna already had an "ambulatory" certification for her current position, and doesn't explain why it would have been significant to obtain an equivalent certification for "home health" for the new position. She does not indicate, for example, whether that certification is sought-after by employees, whether it is a desired credential by employers, whether people who have that certification are more likely to be promoted, or whether it has any value outside the position she would have needed it for. She does not even say that she would not have been able to receive the same or a similar certification in her existing position.

In short, all Ms. Luna says about the certification is she would have had to obtain it, without any explanation for how that would have been advantageous. Without anything to distinguish this from the sort of routine training that might accompany a purely lateral transfer that would not be actionable, a jury could not find that this would be a significant enough change to constitute a materially adverse action. *See Stephens*, 569 F.3d at 791 ("Whether a change in job responsibilities is materially adverse all depends on how much of a change, and how disadvantageous a change, took place."); *see also O'Neal v. City of Chi.*, 392 F.3d 909, 913 (7th Cir. 2004) ("By definition, any lateral job transfer will result in changes to an employee's job responsibilities and work conditions. To sustain a federal employment discrimination suit, a plaintiff must show something more than the ordinary difficulties associated with a job transfer."); *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (holding that a transfer was not materially adverse even though it would have required the plaintiff, a salesman, to learn a new set of products). Put another way, without any explanation for why the

certification is significant, Ms. Luna has not shown that losing the opportunity to obtain that certification would be adverse enough to a reasonable person to deter them from exercising their rights under the FMLA.

These facts are not comparable to *Breneisen*, on which Ms. Luna relies. There, the plaintiff was reassigned from a position that involved administrative functions to another position that involved manual tasks. The plaintiff and another employee viewed the move as a demotion, and the plaintiff's boss admitted that the new position had less prestige and visibility. The court thus held that a dispute of fact existed as to whether the move qualified as a materially adverse action. *Breneisen*, 512 F.3d at 977–79. Here, the two positions had the same job description with largely the same duties, just on a different team. The transfer would not have been a promotion, either, and there is no evidence that one was more prestigious than the other. In that respect, this case is closer to *Stephens*. The plaintiff there claimed that he was reassigned to menial tasks, but the court found that the changes in his duties were only minimal and that the new tasks were "not dirtier, more arduous, less prestigious, or objectively inferior" to the old ones. *Stephens*, 569 F.3d at 791. Even though the plaintiff alleged that the new tasks were "less desirable," the court held that the reassignment did not constitute a materially adverse action. *Id.* at 791–92. That is true here as well, as the transfer would have involved only minor changes in Ms. Luna's responsibilities.

For those reasons, the Court concludes that Ms. Luna has not offered evidence from which a jury could find that she experienced a materially adverse action. She has not shown that the distinction between the two positions was significant enough that being placed in one as opposed to the other would deter a reasonable person from exercising rights under the FMLA. Ms. Luna thus cannot prevail on her claim that Franciscan interfered with her FMLA rights or

retaliated against her for taking leave. Accordingly, the Court must grant Franciscan's motion for summary judgment.

## IV.  CONCLUSION

The Court GRANTS the motion for summary judgment [DE 29] and DIRECTS the Clerk to enter judgment accordingly.

SO ORDERED.

ENTERED:  February 18, 2020

             /s/ JON E. DEGUILIO
            Judge
            United States District Court